Good morning, your honors. My name is Hugh Fleischer, and I'm representing Frank Moniz in this matter. Mr. Joseph Rocher is counsel, but the court has approved my handling the appellate part of this process. And we think that the court erred insofar as his rights under the Sixth Amendment. And we think that the Barker v. Sawingo authorities clearly show that, indeed, his Sixth Amendment rights over a speedy trial violation are clear. Obviously, the length of the delay, as your honors know, is seven months. And, of course, Mr. Moniz objected immediately when there were efforts to have it declared a complex and to be delayed. And so far as the reason, the government opposed the attempt to get a speedy trial for Mr. Moniz. And the timeliness and the manner of the defendant's assertion for a right of speedy trial was essentially conceded by the United States. And that, of course, in terms of the prejudice that was caused by the delay, we think that the Valentine three evils were clearly present. I mean, Mr. Moniz was incarcerated, and we think essentially any incarceration is essentially oppressive. And it was. He was incarcerated for the entire time, from the time of his arrest up to the time of the trial and beyond. And obviously that resulted in protracted anxiety and concern on the part of Mr. Moniz in terms of having to deal with facing this trial. And then in terms of impairing his defense, we feel that clearly the most important thing was that had the trial been held on a speedy basis, as was requested by Mr. Moniz, he would not have had his co-defendant testifying against him. That's what we say. At that point, he was a co-defendant. And essentially seven months later, the Friday before trial, the co-defendant then changed his plea and then was, we feel, the only credible evidence against Mr. Moniz. We don't we don't believe that he was fully credible, but it was the most convincing evidence there was. And that we think that under those circumstances, clearly the Sixth Amendment rights of Mr. Moniz were violated. And in terms of related issue, in terms of his motion to sever, he clearly was not named in any of the gun counts, nor was there any evidence that he was involved with guns in any way. And certainly the misavailability of evidence that would not have been available in a separate trial is one of the issues. I know the government has contested that, but we feel that that would not have been the evidence that was available in. Why wouldn't it have been available in a separate trial? I was puzzled by your argument on that. Well, we think that the out-of-court statement was clearly considered, would be considered unmissable. And we don't think that he should have been allowed. He still wouldn't have been a co-conspirator? Well, he would have been. But the fact is, we feel that, of course, first of all, as a co-conspirator, and while being charged, he would not have testified against Mr. Moniz. And none of these incriminating audio or video tapes really touched Moniz. His presence, he had only presence in one of the tapes, and there was no showing that he was involved with drugs at that point. So we think that, clearly, he was merely found in the premises, which we believe violates the U.S. v. Severi case, the Seventh Circuit case that we noted. And then we also cited U.S. v. Goynes in the Seventh Circuit. And then in that case, we feel as though a Seventh Circuit case, it's clearly applicable to the facts regarding Mr. Moniz. I mean, here again, there was scant evidence against this defendant. He was clearly not involved in any of the major aspects of this case. There were huge things happening with other defendants that he wasn't involved with. Again, not with drugs, with guns, nor any of the other major factors. And we frankly think that there's a serious question about his being involved in the conspiracy. And then in terms of the denial of the questioning of the confidential informant, we're aware of the fact that the Ortega case determined that shoplifting under conviction is not admissible under 609A. And as we said in our brief, and we feel strongly that that really was an incorrect determination of this court, and we asked for that decision to be overturned, we feel that the more proper decision in the state cases that we showed clearly showed that shoplifting is certainly something that could fall clearly under the ambit of 609A. Of course, we also cited Rule 405, evidence of specific instances of a witness's conduct when the evidence of that witness's character was an issue. And that clearly should have been a basis for determining, for allowing the questioning of this witness about those shoplifting charges that were in fact present. And even though they were not convictions and they were allowed diversion, as they say in the state court, we felt that there was a deceit in the way in which this confidential informant arrived at that matter, and we feel that that was a proper basis on which to allow the questioning. And I'll reserve the balance of my time if there are any questions. Good morning, my name is Shelly K. Chaffin. I represent Mr. Contreras in this morning's argument. As this court is aware, there's only one issue with regard to my client, which is the criminal punishment issue. And I want to just speak a little better. I apologize. As this court is aware, there is only one issue with regard to my client, which is the criminal and usual punishment issue, which was outlined with all of the relevant case law in the briefings by both of the parties. And so unless there are any questions with regard to that issue from this court, I would just conclude by saying that with regard to this issue, this court has the opportunity to present this case once again to the United States Supreme Court to allow them to reconsider the hideous and draconian drug laws, and especially with the second and subsequent gun protections. Unfortunately, the court might have that opportunity, but this panel, as you know, does not. Yes, I understand that, Your Honor, unless there are any questions. You've got an addition. The gun counts were 30 years consecutive on top of the rest of the things. That's correct. There was 121 months for the drug counts, and then I believe it was count 38 or something was five years consecutive, and then the second gun counts, which were actually there were two that were merged, added an additional 25, and that was the only portion of the sentence that he was challenged. Thank you. Excuse me. May it please the court. I'm Kirby Heller for the government. Let me first address Mr. Moniz's claims about the speedy trial. He brings his claims both under the Sixth Amendment and the Speedy Trial Act, and as we outline in our brief, the first question, of course, is whether the trigger for the Sixth Amendment constitutional violation is even set off in this case. The delay was seven months, and although this court has said there's no right-line rule about what that should be, the generally accepted time interval has been eight months. This court has found in the past in a case called Lois that we cite in our brief that seven months is not presumptively prejudicial, and in those cases that it's been shorter than that, where the court has called it borderline, those cases have been very simple, one offense, 922G offense, for example, where it's said that the six-month interval is borderline. But even if the court gets to the next step and looks at the other factors, just going right to prejudice, we don't believe that Mr. Moniz has demonstrated that there was prejudice in this case, certainly prejudice to his defense. The fact that in the interval the government's case got stronger because a witness became available to it is not the kind of prejudice that the court has considered. Well, what you say makes a lot of sense to me, but it seems to me in Hall that is the kind of prejudice. I mean, if you had a murder and there's a delay in trial, and during that delay the prosecution finds the murder weapon or something, that's a strange kind of prejudice. But Hall did, you'd say, I think, that the fact he was prejudiced by the fact that this witness pleaded guilty and then testified against him. Well, Your Honor, Hall is a different factual situation than the case here, and the district court, I think, had a very good discussion of the Hall case when it denied Moniz's continued motion for a violation of his speedy trial rights. In Hall, the co-defendant was seeking a continuance solely to enter into a plea agreement with the government and what turned out, I guess, to be a cooperation agreement, and so that the continuance was granted for that purpose. And what the court made clear in Hall, which was an interesting point, is that one of the factors, and I should just point out that Hall was judging not a Sixth Amendment violation, but whether the delay was reasonable under 3161H7. What the Hall court pointed out was that the delay, in fact, was not helping to bring about the benefits of the continuance, which is to have a joint trial. The point of the continuance was to get one of the defendants to plead out, and so that then Mr. Hall would be going ahead solely on his own trial. And, of course, that's not the case here. The district court made the finding that the continuance had nothing to do with the government's efforts to get any kind of plea agreements from the co-defendants. That just happened to be something that routinely happens on the eve of trial, a defendant's about to go to trial and realizes he might do better if he pleads guilty. And certainly those factual findings are not clearly erroneous here. We also point out in our brief, and I won't go through the calculations here, that under the Speedy Trial Act, if you just look at motions that were filed by Mr. Moniz, and he took full advantage of that continuance to file motions, that there's no Speedy Trial Act violation. As to the severance claim, I just want to make two brief points. One is that, in fact, Mr. Moniz was acquitted on one of the charges. And as this court has pointed out, that just speaks volumes about the jury's ability to compartmentalize the evidence, and that it did so. The second point I want to bring out about the severance is that the district court did a very careful job in its instructions to the jury. It not only gave the standard instruction about the jury should consider the evidence individually on each county against each defendant, but when it was describing the charges, it individually labeled each charge and each defendant. So, for example, it said Mr. Contreras is charged in count 16. That count charges possession with intent to distribute drugs. And for you to convict Mr. Contreras on that charge, you have to find the various elements. It then repeated the same thing for Mr. Moniz. Mr. Moniz is charged in count 16, same count, and went through the same thing. So he didn't even say, he didn't even put the two defendants together. They're both charged in count 16. He did it individually. And I think that has a very beneficial effect in making clear to the jury that it's separate. If there are no questions on the remaining issues, we'll rely on our brief. Thank you. Thank you. Any rebuttal? No further, Your Honor. Nothing from the Your Honor. Fair enough. Thank you. The matter is now submitted.
judges: Pregerson, Canby, McKeown